Thank you. Okay, the next case before the court is SFA Systems, LLC v. Newegg, Inc. Case number 141712. Mr. Lendley, you want three minutes for rebuttal? Yes, Your Honor. Okay. You may begin. May it please the court, Your Honor. I'd like to start by acknowledging my co-counsel, Mr. Breen, because he's doing double duty today. At the end of this argument, he's going to walk over to the other side and argue the next case. Your Honor, SFA sued Newegg. It litigated for four years, and then it dropped the case with no payment and no settlement. It did this for a very simple reason. SFA was a shell company of a company called IPNAV, and IPNAV is in the business of filing patent lawsuits against, so far, 1,770 defendants, including 87 in the particular SFA campaign, and settling them for nuisance value fees without regard to the merits of the case. When SFA realized that Newegg wouldn't pay a nuisance value settlement, it dropped the case. That wasn't a context-specific strategic decision. That was SFA's business model, litigation without regard to the merits, and that was bad faith litigation. In E.O.N.Net, we certainly said that was a factor that the court could consider. In this particular instance, though, even the chart of settlements, which they're confidential, so we can't discuss the numbers, but the ranges are a lot bigger than they were in E.O.N.Net, aren't they? Well, Your Honor, yes and no. The chart of settlements includes, I should note, settlements as to the entire SFA portfolio, not just the patented issue here. There are some settlements that are in the seven figures with regard to software companies accused of infringing CRM software, a different technology than is at issue here. If you look at the retailers, like my client Newegg, you'll see settlements that hover around $25,000, $50,000, in only one case more than $500,000. That is all well less than the cost of litigating a case. Why are the numbers higher on the software? I don't know the answer to that, Your Honor. You made the distinction. I thought you'd have an answer. Well, I think it could be because there are other patents or other patent claims at issue, but it could also be that those are larger companies and that their discovery costs are accordingly higher. That would be consistent, I think, with the business model for litigation. The range between the lower number and the $7 million, $6 million, $7 million? I don't think any numbers are as high as that, Your Honor. But I think the AIPLA suggests that the cost of litigating a patent case all the way to trial these days is as high as $5.5 million median. The argument is the same on all of them. They cut and run. I think that's exactly right, Your Honor. They take as much money as they can get in litigation, depending on the negotiating strategy, depending on the size… Is there any evidence of vexatious conduct here? I mean, do SFA lawyers lie and cheat and irritate the judge? No, Your Honor. We are not arguing that there was… Any Rule 11 sanctions sought here at all at any stage in the proceeding? No, Your Honor. Why not? I thought you said this was an egregious case. We believe it is an egregious case, Your Honor, but the egregiousness… Let's assume that your case is utterly frivolous on the merits, which you believe this one is. Then Rule 11 would provide an avenue of relief, would it not? Your Honor, Rule 11 might provide an avenue of relief with respect to merits determinations. But I don't think Rule 11 provides the relief that we're asking for in Section 285 with respect to a business model that is based on nuisance value litigation and based on settlement without regard to the merits. And we think there is abundant evidence of that here. If a judge has an inherent power to grant some monetary relief, right? That is correct, Your Honor. Can you even rely on that? So let's assume that somebody has misbehaved in the fashion that you say SFA has. I would have thought that a district court judge that agreed with you would have all the tools necessary to give you all the relief you're asking for under 285, under Rule 11. Your Honor, I'm not sure that Rule 11 is, in fact, the correct venue at that point. We did ask, in fact, under the inherent authority of… Isn't there a Rule 11 motion at any time during the proceedings? Yes, Your Honor. And the Rule 11 motion… I have the complaint as filed. The complaint on its face is frivolous. And you don't want to go any further and you want to stop them, you go in and you fire your Rule 11 bullet. I think if a complaint on its face is frivolous, that's true, Your Honor. I don't think that that's this case. We don't know, at the time the complaint is filed, whether or not it's frivolous. Our complaint here is with respect to the litigation model, which is that the merits are irrelevant. SFA files the lawsuit, it settles the lawsuit, and it does so… Now, wait a second. Your adversary wouldn't agree with you that the merits here are totally frivolous or irrelevant. I mean, you don't have a… Did you depose whoever it is that governs their litigation strategy? Your Honor, we sought… Did you depose them? No, we sought limited discovery, Your Honor, on the fees motion, but the answer is we were met with privileged reactions. I mean, I wouldn't think you're being privileged with regard to litigation strategy, perhaps. Yes, Your Honor. If you're trying to mount your case, I would think you'd want to put on the stand in a deposition, there's supposedly some genius behind their system that mandates that this is the way they always behave, right? Yes, Your Honor. You sort of said that. It's sort of the Mr. Big Bad Guy. You'd put him on the stand, you'd depose him, find out whether this is really the way he behaves, and you'd remind him constantly that he's under oath. Your Honor, I think the problem is that because it's a litigation strategy decision, we're met with privilege objections at every issue. And this Court recognized that in Killepass when it said, we understand that you're not going to have very often clear, direct evidence of bad faith. That's why you look to circumstantial evidence of bad faith. What if these patents aren't actually worth that much money? So you described their litigation strategy as file a claim, get whatever small dollar amount they can get, and if they can't, they don't want to bear the litigation cost. Well, what if they have the same strategy, but their view is, you know, we're going to try to get what we can. We'll spend the money to file a complaint. If the defendants realize they're infringing, they'll pay for the small value of these patents, and we'll move on. If somebody's going to fight it, we're not going to spend $5 million when their damages are only $50,000. I mean, it seems to me that those are both accurate, could be accurate descriptions of the same conduct. I think it is entirely possible that there is such a case, Your Honor, and a patentee in such a case would be entitled to try to seek to enforce their rights, even though there are only small dollar amounts. I think there are several things about this case that suggest that this is not such a case. The first is that SFA didn't behave that way. It doubled down on this suit more than two years in. It went and litigated for more than two years. It got discovery, including discovery about how much my client makes in sales, and then it filed a new patent two years later in a separate lawsuit, and they had to later be consolidated. By that time, it's completed extensive fact discovery. It knows how much money might be at stake. So the idea that this is a small value – At this stage in the game, both of you are burning up money like gangbusters. Well, Your Honor – Is there any evidence in the record that they were being fronted by somebody as opposed to burning up their own money? I think it is a matter of record that they were, in fact, being fronted by IPNAV, and I don't think that they'll deny that. What we don't know, quite normally with this business model, the plaintiffs are not burning up money because they're on contingency fee. We sought that evidence in discovery. They refused to give us their arrangement on privilege grounds. So we can't know, but it is a reasonable – Somebody's burning money. The lawyers are burning their own money, but somebody's burning the money, right? I think that's right, Your Honor, and therefore the lawyers have an incentive to settle the case. Let me ask you what your legal theory is here. So are you saying that under the totality of the circumstances analysis, that even if you have a case that's objectively not frivolous, maybe even fairly objectively reasonable, if you have someone whose entire strategy is simply to use litigation for an improper purpose, that that would be enough under Octane? Yes, Your Honor. The Second Circuit and the Ninth Circuit have both expressly held that. The Second Circuit holds that if a litigant has made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system, awarding fees is appropriate. We think the Federal Circuit should join that case. Now, it is right to say that the cases this Court has so far decided, E.On.Net and Monolithic, acknowledge it as a basis for fees, but there was also other conduct in those cases. But I think as a matter of policy, this Court should follow the Second and the Ninth Circuits. These lawsuits are, quite frankly, the thing that brings the patent system into disrepute. It's not an accident, I think, that they show up on the John Oliver show, IPNAV. These are the things that are causing people to worry, and I think, frankly, with good reason, because we want patent litigation to be about the merits. We don't want it to be about a business model that takes advantage of costs. Even if we agree with you, though, I mean, you're essentially telling us that we can find that this District Court abused its discretion when there are scenarios where, potentially, they weren't litigating in this bad business model. Your Honor, I think you can because there are a number of facts here, including, frankly, their inability to come up with any explanation for why they dropped the case when they did that passes the straight-face test, that do suggest that this is the business model. But I would suggest in the alternative that, at a minimum, the District Court should be required, under the legal standard we suggest, to take a look at the question. The District Court devoted entirely two sentences to our argument here, and the only thing it said there was, just because you filed suit against multiple defendants doesn't mean you act in bad faith. We agree, but that's not an analysis of the argument that we're actually advancing. So you're saying that because we've said it's a factor that can be weighed, the fact that he wasn't willing to even weigh it at all is an abuse of discretion? I guess the way I would phrase it, Your Honor, is I'm not sure he exercised discretion in a way that it could be abused. He simply didn't address the issue at all. But, yes, alternatively I would say it was an abuse of discretion to devote only two sentences to the issue and to not target the arguments on the merits. So what if he had said, okay, I accept the proposition that this is what their strategy is, and I accept the proposition that I could weigh it, but I still think that in the totality of the circumstances it doesn't get me there. So I think, Your Honor, if the reason was because he didn't think that was the law, then this Court should say, hey, the law actually does permit a finding of fees here and send it back. But alternatively, I think at a minimum, he would be entitled to a discretion in weighing the totality of the circumstances. It is worth noting here that the District Court neither addressed our issue on the litigation business model, nor did he apply the correct standard on the merits. Instead, he said the question is whether the frivolity of the lawsuit is reasonably clear without looking into a mini trial on the merits. That bears no resemblance to the octane standard. So if this Court is to remand and ask the District Judge to consider the totality of the circumstances, including the bad faith litigation, we think it would be advisable to look to the substantive merits issues as well, because otherwise we're going to be back here in a year as the District Court says, well, I already ruled on the merits issues. But if the District Court already considered your claim construction positions and largely rejected them, the District Court considered your summary judgment and denied it, isn't that enough for the District Court, who's the one that's there, to know that we're not talking about a frivolous lawsuit? In this case, Your Honor, I think not, because both of the questions were questions of law and we think the Court simply got them wrong. That said, our primary argument here is that this Court can resolve the issue on the basis of the litigation strategy behavior and not on the merits. With your permission, I'll reserve the rest of my time for rebuttal. May it please the Court, John Edmonds on behalf of the Appellee SFA Systems, LLC. I think the starting point for the Court's analysis of whether the trial court abused its discretion in denying the motion is to look at the motion that was filed. There's been a lot of advocacy done by Newegg that's taken place on appeal, but when you look at what was filed with the District Court and the lack of facts that were put forward to support any relief, then that helps explain how the District Court reached its conclusion. The fact that Newegg – what it alleged was that a lot of defendants had been sued over a four- to five-year period for infringing a patent, that there were many settlements below the average cost to defend. As the Court's pointed out, there were also some very large settlements. On this patent? I haven't seen anything in the record to support the statement made that these were something broader, but if he's saying that it included other patents, that would be typical in a license. Typically, when there's a litigation and it's over a patent, it would be not surprising there may be other patents put in, but these are the numbers that they have relied on, and I haven't heard them dispute them until today in terms of these numbers being inaccurate. Was there any differentiation between retailers and manufacturers? Well, all I can say is these parties settled at arm's length for what they thought was the right business and legal decision for them. Not surprisingly, these large software companies or sales force providers had significant exposure, and perhaps even not surprisingly as well, that once you've now licensed out this huge swath of the industry, then as you enforce the patents against others, it may be that significant portions of the accused functionality come off the table because their software providers are already licensed. So, yes, some parties have more exposure, but the numbers that I look at, I average them, and when you average, you see 47 different names on this list, but there are only really 42 because some of them pay multiple times in payments, and the average settlement, when you include in the last settlement, which was the Amazon case, which was what SSA was trying to put priority over this case in terms of getting it to trial, those are over three quarters of a million dollars, over $800,000 when you add in the Amazon. It's a significant amount. These are not, in our view, nuisance value settlements. I think a problem is that, oh, in terms of... In all those cases involving this patent over the years, have any of them ever proceeded to a decision, a merits decision on infringement and or validity? The closest was the N4 case, which this trial court presided over, and that case made it all the way through pretrial on the eve of trial, and N4 flinched, and it had a very sizable settlement, not a nuisance value... It was not a, quote, cut-and-run settlement at all. So this court, who'd heard all these allegations made, had already presided over N4 and seen that this was a serious plaintiff that was serious about enforcing its rights. In addition, the Amazon case was marching along, and the court could see that this plaintiff was trying to push that case to trial because they thought they had a very, very sizable damage model against Amazon. This court had also seen that the same trial team who represented on another one of the Johnson patents had taken two cases to trial on that patent and had prevailed twice, and by the time this court reviewed this motion, the same trial team that had the conflict, they had a pretrial hearing during what was a scheduled trial of this, they trialed what's called a TQP case and prevailed over a new agate trial. But the problem is the district court doesn't say any of that in its decision. The district court just says, I'm not going to consider it because there's lots of times that people enforce a lot of patents. And isn't that a problem? I mean, our case law is very specific that it is a relevant factor, and for him to just say it's not relevant, isn't that sort of a failure to even exercise discretion? I think what the fundamental statement by the district court was that it looked at, it was Newegg is the movement, and Newegg's motion makes some allegations, but they had no proof to back it up. All they did was they said, they sued a lot of defendants, here's their settlement numbers, we think this is a cut-and-run strategy, they dismissed their case against us, we don't think that their explanation of why they dismissed it, we don't think that's credible, and now we're going to incorporate, by reference, all of the briefing in the case, and we allege that you got the claim constructions wrong, we allege that you erroneously denied our motion for summary judgment indefinite, and we also allege that the patent's invalid, see our 1,281 pages of invalidity contentions we incorporate by reference. That's what the judge was presented with. He was presented with no facts that the alleged extortion tactics litigation model exists. And the statement said, well, we couldn't take discovery and try to prove it up. If that's something that they thought was viable, they had that opportunity. This is the first I've heard, there's nothing in the briefing, nothing in the record about privilege objections, or no motion to compel was denied. And the fact of the matter is, they just didn't have any facts to back up these allegations, and so when the district court looked at it, the court said, well, I'd already rejected these, I'd already rejected their claim construction positions, which is essentially their non-infringement argument. I've already rejected their motion for summary judgment of indefiniteness. All they pointed out is that they filed several lawsuits, and says Newegg's provided no evidence that this case stands out from others. There is no evidence. It's just a bunch of base allegations without any evidence. So I think the court addressed the very little it was presented with by Newegg in what was a throwaway motion that they probably never intended to win. What about the fact that the trial court appeared to adopt a different standard for cases that were dismissed before judgment or before trial? It seemed to say that he's not going to really question the merits very closely, he's just going to say, I can't do a mini-trial. Well, I think, okay, so the merits, that's different than, so in one part we have just unsupported baseless allegations of a, quote, business model and a motivation of which there was no evidence to support. So that's one thing. As far as the mini-trial, so Newegg's motion that he filed said, many of the claims are invalid, CR and validity contentions. Many of the claims are indefinite. Not all. CR, summary judgment of an indefiniteness, that you denied. And it said Newegg believes it doesn't infringe. It had no evidence of non-infringement. It had no charts, nothing. It just stated the belief that they don't infringe. That's all their motion said. So, you know, in terms of the court being faced with that, when somebody files a motion and says, well, we don't believe we infringe, but we're not going to put forth any evidence of that. We don't believe the patent's invalid, but we're going to put forth 1,300 pages of stuff as just kind of a see-also. And, you know, we don't believe the patent is definite. You've already denied that. That's what he was faced with. So, no, there wasn't even any evidence to have a mini-trial on. So I think the fundamental thing is that there was just simply Newegg had no evidence. But as far as in that situation, what is the trial court supposed to do? There's no evidence of non-infringement to weigh, none presented to weigh. There's no evidence of invalidity to weigh. Certainly, a trial court can't be expected. If you were so confident in your merits positions, having won your claim construction arguments, having won the indefiniteness motion, then why did you dismiss the lawsuit? Well, the reason for the dismissal for lawsuit was that as discovery went on, it revealed a diminished value of the case. And, in addition, Newegg's counsel had conflicting trial schedules. And I understand that. But they were before the same judge in the same courtroom. Both trials aren't going to go. You knew that. That's the way this judge does things. He would set a bunch of cases for trial, and then he'd pick one. They can't go on the same day, but they very well could go on. It could be that one gets called, the other one falls immediately thereafter. It could be that one gets called, and they announce settlement. The other one goes right there. Also, in addition, the same lawyers had a pretrial hearing in a very significant case that was during the trial. And it was a real conflict for them. So, in this case, as you've seen, the Amazon case took much higher priority because the damages against Amazon were, in order of magnitude, higher than the damages against Newegg. And also because they were much more likely to settle than Newegg was too, right? Well, that's Newegg's argument. I mean, we don't know Amazon's going to settle until they say they settled. So, I don't know. I mean, that's an argument they've made. But, again, they've asserted Amazon's a pushover or something, and they really don't have anything to back that up. So, you know, but our view is that it's reasonable when they're faced with this conundrum, and they're only – these are small law firms. There's only so much effort they can devote. They're trying to devote their full attention to this Amazon case, which is maybe the biggest case that they would have ever tried, the TQP case as well. And they made a hard decision with the fact that Newegg, the damages weren't – at that point weren't going to be enough to really justify a trial, made a hard decision that just doesn't make sense. What kind of numbers were you looking at? What kind of numbers was your damage expert going to say with respect to Newegg? It's my understanding that they were in the range of these lower settlement values. So, you know, one thing is that these numbers tend to take on a life of their own. So that doesn't – now you're getting to where the cost of the trial might very well exceed the damages number when you're trying to get ready for another trial with exponentially larger damages. So, you know, that's a hard decision to make. So did you have your damages expert report as it relates to Newegg? It's my understanding – I was not part of the trial team. I'm appellate counsel, so I'm going on the record. And the record is that in its opposition to Newegg's motion for attorney's fees, they said that our expert reports were underway and we could have had them ready if we had to. And that's – you know, this is an abuse of discretion standard. Judge Davis heard all this. He heard their justifications for why the dismissal was made. He heard at what point the case was ready. He also saw how hard they were working on the Amazon case. He'd also seen motions that had been filed showing that the plaintiff was being diligent in discovery and the plaintiff was trying to get his experts. I mean, the statement that, well, they weren't going to provide expert reports, they had to file a motion to compel to get their expert access to the source code because it was being blocked. Clearly, they're working on expert reports. So all these facts were weighed by the trial court who had a picture of the whole case from 2009 all the way through 2013, who was able to see, judge the credibility, weigh all this, and it came to this decision. I think that asking this court on an abuse of discretion standard to come in and second-guess all that is just – runs against the abuse of discretion standard and fails to give proper deference to the trial court on a decision in which it had intimate knowledge of all the facts of the attorneys and was able to judge the credibility of all these things and able to judge what facts were put before it. In the district court, it had construed these claims three times. It had ruled on numerous motions in the Infor case, in the Big Machines case, in what we call the 800 Flowers case, and the district court had the best bird's-eye view of this case, the best knowledge of the facts, the motivations, the credibility, the inferences, something unparalleled that this court just simply couldn't do. Even if that's all true, I'm the first person to defer to district court decisions that are discretionary, but the district court has to give us something to defer to. In this particular instance, you're criticizing the other side for making a better argument on appeal, but you're arguing things on appeal that just don't show up in the district court's opinion. What a district court generally does is it decides the facts that are put forth before it, and those are the ones it comments on. The fundamental flaw in Newegg's case and in their motion was they just simply had no facts to back up these allegations. They said the plaintiff is a bad actor, and the proof we have of that is that they have a bunch of lawsuits and here are the settlements, and you've seen the settlements too. They just don't bear that out. Okay, so that's a different argument. I mean, your whole theory about, well, the district judge knew these people. He'd seen all these other cases. He didn't say any of that. Well, what he said was Newegg hasn't put forth any facts, which is exactly what happened here. Okay, but again, that's a very different argument than you putting forth facts. Well, I think that the district court doesn't necessarily need to – I mean, the district court has wide discretion as to how detailed its opinion is going to be. I think when Newegg – I mean, if their theory is that you go out and litigate these cases and you get nuisance settlements, what kind of evidence do you expect them to get if you don't allow them discovery into litigation strategy, other than there are X number of cases that are settled at X number of dollars? I'm not aware that that discovery wasn't allowed. It's not part of the record that's the first I've heard of it, the statement to you. I mean, why isn't raising those two facts alone enough to make an inference of that that the district court should have at least considered? Well, first of all, they're not even in their brief. I mean, this claim that we were denied discovery – No, I don't mean about the denied discovery. I mean, if they come in and say this is their litigating strategy. Over the last however many years, they've had this many cases. They've all resulted in settlements. They've never taken anything to trial. Why isn't that enough to raise an inference of a bad conduct litigating strategy? Well, because at a minimum the district court – Obviously, there could be an inference the other way. I asked your friend about that inference. But why isn't that enough for at least the district court to say, I need to really seriously consider that instead of brush it off and say, well, that happens all the time. That doesn't mean that it's a bad conduct strategy. Well, the district court considered the facts that they had, which was that they'd sued these companies. The settlements were put forward. The settlements, if anything – In Ioneg, you had the small cookie cutter. Here we have settlements across the board, from very small to many that are very, very large. If anything, looking at these numbers, it shows that there's not some cookie cutter, sue and settle, cut and run. It shows something different. How do we know that a large settlement is actually a large settlement? I mean, if you're claiming against a company like Amazon a billion dollars and they settle for half a million to them, that might be a nuisance settlement. So the range of the numbers doesn't tell us a whole lot, necessarily. But that's all that Newegg put forward in its motion. What else could they have gotten? Well, as Judge Plevenger said – Here's the problem. It seems to me that the Supreme Court has sent the message in octane that these fee standards are different than Rule 11 standards. But yet the district court here seemed to essentially apply a Rule 11 standard. Why wouldn't that be an abuse of discretion? Well, I don't see that. I mean, they cited octane in one sentence, and they didn't want to be briefed under octane. They just said, for the same reason that we argued in our motion, which there were no facts to back it up, it stands out from the others. The district court acknowledged octane. He went through the correct legal standard. I don't see how this court could say he applied the incorrect legal standard because it's in his order. It's there. So I think the complaint is that, as I've understood it, is that he didn't go into more detail as to why Newegg has provided no evidence, but they just simply didn't provide any evidence. And they still haven't provided any evidence. It's just a bunch of supposition and allegations on their part. So, I mean, if this court said, well, the district court erred, I mean, that there was evidence, but, I mean, there was no evidence. And it certainly can't be said that an abuse of discretion occurred when the district court found that there was no evidence because there just simply wasn't.  You're out of time. Thank you, Your Honor. Mr. Lemley, we'll give you five minutes for rebuttal to even things out here. Thank you, Your Honor. I want to start with the statement that they discovered during litigation the diminished value of the case. Because that statement is in their brief, but it's in their brief with no record citation whatsoever. It's a simple statement. There's not even any indication of what made them think that. There's no citation to an expert report. The expert report is not in the record. This court in Kelopath said that it is, quote, easy to provide, unquote, evidence of good faith if it exists. There is no evidence of good faith here. None. And I think it's notable even that while my friend Dan – Is the burden on the motion for them to show good faith or for you to show bad? The burden, Your Honor, is for us to show bad faith. But as this court said in Kelopath, that can be done with circumstantial evidence because it's rare that we're going to have somebody stand up and say, yes, I admit that my business model is bad faith litigation. We think we've shown a pattern of filing an enormous number of suits across all industries without regards to the merits. We've shown they never go to trial or judgment. We've shown that the settlements are all below the nuisance value, at least in the retailer space, and none of them are very high. And we've shown that they can't come forward with any evidence whatsoever to the extent that the explanation they actually offer and rely on in the briefing is frankly ludicrous, right? The idea that we settled eight months before trial, we had to drop the case for no fees, for no payment, because it was set for trial at the same time as another case before the same judge, that's just inconsistent with the way litigation actually works. I do note that while he dances around the issue, my friend never stands up and affirmatively says, this is not our business model. And I think there's good reason for that. The circumstantial evidence here is quite strong, and that circumstantial evidence I think does then warrant the easy-to-provide evidence of good faith from the other side, and we just don't have that evidence. What's your response to the fact that your motion for attorney's fees was pretty thin? Your Honor, the motions in the Eastern District of Texas are not long motions by design in that court. We did on the merits, it is true, we filed a fairly thin motion, and that's because the district judge had already ruled against us on those merits issues. We think this court can and should provide guidance to this district judge if it chooses to remand on those legal questions. But it was, they'd been fully briefed before, and they'd been fully briefed before that judge, it didn't seem advisable or helpful to fully brief the same issues the judge had already identified. We argued them, we clearly raised them, they responded to them on the merits. I think the district court applied the wrong standard on the merits in rejecting them, but I'm not surprised that the district court, having already ruled against us on those merit questions, also ruled against us on the merits parts of the fee motion. I do think if this court is to remand rather than simply... It seems to me that the problem, at least that I'm having, is you have your view of how this case went and the conduct of this plaintiff. The district court didn't necessarily agree with you. How is that an abuse of discretion? You have a short... I mean, if you were to describe what the precise abuse of discretion the district court here is that requires a remand, what is it? Your Honor, I think on the nuisance value business model, it is the unwillingness or inability to address the arguments we did make. But he kind of did address it. That's the problem. He said just the fact that there's a lot of different settlements and cases and things like that doesn't necessarily mean that's a bad business model. So that's correct? He did say that? That sounds to me like you're wanting us to do an opinion correction exercise rather than he didn't address it at all. Well, Your Honor, I think if that were the only circumstantial evidence, they filed many lawsuits, the district court would not have abused its discretion in saying that itself cannot be evidence of bad faith litigation. But here I think there's more. Here I think you add in the settlement payments, you add in the fact that they never go to trial, you add in the inability of the other side to come up with even a plausible explanation for why they would drop the case four years in, having put us to a lot of litigation expense, and added a patent two years along the way. What percentage of patent cases that are filed every year go to trial? Go to trial, a fairly small number, Your Honor. It's about 3%. Go to judgment of some sort, it's about 15%. You were talking about you were faulting them for never going to trial. My recollection was that very, very few cases go to trial. That's correct, Your Honor, although it is quite notable. None of the cases are disposed of before a response to pleadings ever filed. That's correct, Your Honor. I'm talking about all 7,000 cases that get filed, 6,000 that AO reports. I think that's right, Your Honor, but it is notable that in filing 87 suits, they've not only never gone to trial, they've never even gone to judgment on a case. They've always settled. And here I'll note one thing. The public policy favors settlements. We teach that in law school. It does, Your Honor, but I think it favors settlements. It preserves judicial resources. I think it favors settlements. It provides amicable settlements, makes peace in the kingdom. You don't have angry people in industry out there. I suggest, Your Honor, that with this business model, you most certainly have angry people in the industry, and that's because the settlement is based not on the merits of the patent case. They may feel the settlement's unfair. They believe that the business model is unfair, Your Honor, because it has nothing to do with the merits of the case, and that's what we're concerned about. Thank you, Your Honor. Thank you. The case will be submitted.